**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Criminal No. CR 23-160(30) (NEB/JFD)

| | |
|---|---|
| United States of America,   )<br>    )<br>         Plaintiff,  )<br>    )<br>vs.    )<br>    )<br>Amarjah Lester,   )<br>    )<br>         Defendant.  ) | **DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE AND HIS POSITION REGARDING SENTENCING** |

The Defendant, by and through his attorney, Patrick L. Cotter, and pursuant to U.S.S.G. § 6A1.2, and Local Rule 83.10, respectfully submits the following position regarding sentencing in this matter.

### MOTION FOR DOWWARD VARIANCE

Mr. Lester's offense of conviction is Conspiracy to Engage in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. §§ 1962(d) and 1963. After adjustments for acceptance of responsibility and for playing a minor role in the offense, this Court should determine Mr. Lester's base offense level to be 30, with a criminal history category of I, resulting in a range of 97 to 121 months of imprisonment. However, for the reasons set forth in this memorandum, a time served sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.

Every parent understands that a child's success depends on the quality of their upbringing. From the day a child is born, they absorb and learn from the adults around them. If a child is exposed to emotionally mature and mentally stable parents and other adults, they are much more likely to reflect those traits. However, if children are exposed to the opposite—mental illness, addiction, uncertainty, and physical violence, as in the case of Mr. Lester—they may develop in a

different direction. Therefore, it is essential for this Court to consider Mr. Lester's personal characteristics, history, and age when determining an appropriate sentence. After considering his story and some of the scientific evidence around adolescent brain development, this Court should apply a downward variance and impose a time served sentence after accounting for the nearly 22 months pre-sentencing confinement, along with 3 years of supervised release where Mr. Lester can most effectively obtain needed chemical dependency treatment and vocational training.

## ARGUMENT

I. **THIS COURT SHOULD VARY DOWNWARD TO A TOTAL PRISON SENTENCE OF TIME SERVED AND THREE YEARS OF SUPERVISED RELEASE.**

After calculating the guideline sentencing range, the Court must consider the 3553(a) factors and "impose a sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. In Mr. Lester's case, the 97–121-month range would be greater than necessary to adequately punish and rehabilitate him. First, any prison sentence, including time served, would be a substantial graduated sanction, given that the nearly 22 months Mr. Lester has already spent in custody for this offense is the longest he has ever served. *See* PSR ¶ 109 ("[Mr. Lester's] current incarceration for the instant offense represents his longest period of confinement."). More importantly, sentencing Mr. Lester to a longer term ignores an important reality: his conduct is a natural result of his difficult upbringing, and at only 21 years old, his brain was still developing. *See* 18 U.S.C. § 3553(a)(1) (stating that the court shall consider the personal history and characteristics of the defendant at sentencing). For these reasons, Mr. Lester respectfully requests the court sentence him to time served and impose three years of supervised release.

    a. **22 months of presentencing incarceration is sufficient but not greater than necessary to both punish Mr. Lester, and to adequately address the deterrence factor.**

2

Mr. Lester took full and unequivocal responsibility for his actions very early in the investigation and prosecution of this very large scale and highly publicized case. Mr. Lester was a minor participant. Mr. Lester was young and unsophisticated. The federal felony Racketeering conviction alone will provide life-long punishment for his actions selling drugs. The nearly 22 months of presentencing incarceration is a sufficient penal sentence for his offense conduct as juxtaposed with his early acceptance of responsibility.

    b. **Mr. Lester will most effectively be treated for his chemical addiction and provided needed vocational training outside of prison walls.**

The Court should sentence Mr. Lester to three years of supervised release. Mr. Lester should be ordered to complete chemical dependency treatment. He should be ordered to complete vocational training toward his goal of becoming truck driver. He should be ordered to comply with any recommendations of a mental health evaluation that might address the trauma he has experienced throughout his life. These recommendations will most effectively be fulfilled outside of prison walls. As further noted in the PSR, Mr. Lester is an integral caretaker for both his ailing mother, his autistic brother, his partner Oddasey and his two young children. It is important to note that prior to his incarceration Mr. Lester was a very active caretaker for his young son. It does not take scholarly articles to understand the critical importance of Mr. Lester active support for his vulnerable family members. Being there means providing for them financially and emotionally. This will be accomplished most effectively with Mr. Lester working and living in the community with his family while under strict supervision. Should he fail in his mission to make the positive changes he has promised himself to make over these hard 22 months in jail the Court then has within its discretion to bring down the hammer upon him and send him to prison.

    c. **Mr. Lester's difficult childhood supports sentencing him to time served with three years of supervised release.**

3

A founding principle of the United States found in our Declaration of Independence is that "All Men Are Created Equal."



This is the bedrock principle upon which our entire jurisprudent relies. However, the harrowing truth is we are not all born with equal opportunity. The reality of this world is that every person is not given the same love, support, attention, opportunities or education. Each person is unique, and their backgrounds must be given due diligence in fashioning a proper sentence. Mr. Lester grew up without a positive father figure. His parents split up when he was just five years old, and he rarely saw his father after their separation. PSR ¶¶ 59-60. Instead, as a very young man he became the caretaker of the household which included taking care of his younger siblings. *Id* ¶ 59. He would cook for them, bathe them, and even help them with their schoolwork. *Id*. This included helping a high needs sibling who was diagnosed with Autism. *Id*. He did this without much help from his father or mother.

Notably, part of the reason that Mr. Lester had to take care of the children was because he faced immense challenges in caring for his mother, who was battling Lupus, a chronic and unpredictable illness. *Id* at ¶ 59. Most certainly, the physical demands of her care were exhausting, especially for a child—requiring constant attention to her fluctuating symptoms. It is also likely that it was draining to witness his mother enduring pain and fatigue daily, with little relief. Balancing his responsibilities with his own life became impossible, leaving him overwhelmed and isolated. The stress undoubtedly took a toll on his well-being, as he struggled to provide the level

of care his mother needed. Despite these hardships, Mr. Lester remained dedicated, driven by a deep sense of duty to his mother.

In addition to the challenges of caring for his mother with Lupus and his siblings, Mr. Lester also had to contend with a stepfather who was not only an alcoholic, but also emotionally and physically abusive toward the entire family. *Id* ¶ 60. Often Mr. Lester would be abused when he "broke a rule or performed poorly in school, but this conduct led to an overall negative relationship" between him and his stepfather. *Id* ¶ 60. It did not help that stepfather was chronically unemployed, while his mother could only manage government assistance given her ailment. *Id*. The situation required constant attention and energy, as he navigated the complexities of caregiving and the tension at home.

Mr. Lester's childhood trauma can be effectively summarized using the Adverse Childhood Experiences (ACE) scale, on which he scored an 8 out of 10. *Id* ¶ 72. This high score reflects the significant hardships he faced, including the abandonment by his father and the substance abuse issues of his stepfather. *Id*. Additionally, Mr. Lester endured emotional and physical abuse at the hands of his stepfather. *Id*. His experiences were further compounded by sexual abuse he suffered as a child and the mental health struggles of his brother, who dealt with suicidal ideations. *Id*. This ACE score underscores the severe impact of these experiences on Mr. Lester's development and well-being. *Id*.

Given the overwhelming stress and instability Mr. Lester faced at home, it is clear why he might have turned to illegal substances to cope. Growing up with an alcoholic stepfather and a mother who used marijuana, Mr. Lester was surrounded by substance use, which influenced his own choices. He began using marijuana at the age of 14, quickly becoming a daily user, and continued this habit until his arrest in the current case. *Id* ¶ 74. As his situation grew more

challenging, he started using Xanax and Percocet daily at age 18, seeking further escape from his difficult reality. *Id*. By the age of 19, Mr. Lester had also started using fentanyl, which he continued to rely on until his arrest. *Id*. The progression of his substance use reflects his attempt to manage the intense pressures and emotional pain he endured over the years. Had he grown up with a stable home, and with positive parental guidance, it is much less likely that he would have turned to such substances.

Considering Mr. Lester's tumultuous upbringing and the immense responsibility of keeping his household together, it is understandable that he did not graduate high school and has an irregular work history. *Id* ¶¶ 76-83, 108. The constant stress and instability of his home life, combined with his substance use, diverted his focus away from academic and career pursuits. Managing the care of his mother, siblings, and dealing with an abusive stepfather requires significant energy and attention, leaving little room for stable educational or professional development. These challenging circumstances, coupled with the effects of his substance use, contributed to gaps in his employment and interrupted his educational trajectory, reflecting the broader impact of his difficult past on his life outcomes.

Working with his uncle was his only real source of economic support, though it was also his uncle who fed much of Mr. Lester's drug addiction. *Id* ¶¶ 28, 108. With no examples of economic stability from his father, who had abandoned him, his mother, who struggled with her own issues, or his stepfather, who was abusive and unreliable, Mr. Lester had no model for legitimate financial stability. Faced with scant support from his family in terms of education or employment, it is hardly surprising that he would turn to his uncle's way of life to provide for his own family and for his addiction. The harsh reality was that drug dealing became a viable option

6

for him, a grim reflection of the limited choices he had in a world where stability seemed perpetually out of reach.

Mr. Lester's descent into addiction and criminal activity was shaped by the lack of a proper upbringing and the absence of solid familial support, placing him on a path where such outcomes became almost inevitable. The turbulent environment he grew up in, filled with neglect and instability, left him with few tools for navigating life in a healthy, lawful manner. However, Mr. Lester is now poised to change the trajectory of his life. Expressing a strong desire to become a commercial truck driver, he is committed to providing a stable and supportive environment for his five-year-old daughter and four-year-old son. *Id* ¶¶ 62-63, 76. His determination to secure a legitimate and steady career not only reflects his desire to rehabilitate but also underscores his commitment to breaking the cycle of dysfunction and offering his children the family support he himself never had.

Considering the foregoing, a time served sentence with three years of supervised release will adequately address the need for punishment for Mr. Lester while also considering the challenging circumstances of his upbringing that contributed to his current situation.

### d. A time served sentence with three years of supervised release is sufficient because Mr. Lester committed the present offense before his brain functioning was fully developed.

The Supreme Court has stated that age is an appropriate consideration, as a mitigating factor during sentencing. *See Gall v. United States*, 552 U.S. 38, 58, 128 S. Ct. 586, 601, 169 L. Ed. 2d 445 (2007) (it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future. Indeed, his consideration of that factor finds support in our cases.) *See e.g. Johnson v. Texas*, 509 U.S. 350,

7

367, 113 S. Ct. 2658 (1993) (holding that a jury was free to consider a 19-year-old defendant's youth when determining whether there was a probability that he would continue to commit violent acts in the future and stating that "'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage'" (quoting, *Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S. Ct. 869, 71 L.Ed.2d 1 (1982)). *United States v. Feemster*, 572 F.3d 455, 463 (8th Cir. 2009) (departing from a 360-month sentence and imposing a 120-month sentencing noting defendant' youth, as it observed that Feemster's criminal career began at age 17).

Indeed, "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." *Johnson, supra*, at 368, 113 S. Ct. 2658; *see also* Steinberg & Scott 1014 ("For most teens, [risky or antisocial] behaviors are fleeting; they cease with maturity as individual identity becomes settled. Only a small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood"). *Roper v. Simmons*, 543 U.S. 551, 570, 125 S. Ct. 1183, 1196 (2005).

Moreover, some of the newer research in brain development shows that the human brain does not reach full maturity until around the mid-20s, specifically between the ages of 25 and 30. *See e.g.*, Law Society of Scotland, *Brain Not Fully Developed Until Age 25, Research Reveals*, Law Soc'y Scot. (Feb. 21, 2020), https://www.lawscot.org.uk/news-and-events/legal-news/brain-not-fully-developed-until-age-25-research-reveals; *see also* Lise Eliot, *Why 25 Could Be the New 18*, Psychol. Today (July 1, 2021), https://www.psychologytoday.com/gb/blog/the-cube/202107/why-25-could-be-the-new-18. Additionally, research conducted by Penn Medicine

8

emphasizes that the brain remains highly plastic during adolescence and even into early adulthood, meaning that it is still undergoing significant structural and functional changes. Press Release, Penn Medicine, *Penn Medicine Reveals New Insights on Brain Development* (Apr. 18, 2023), https://www.pennmedicine.org/news/news-releases/2023/april/penn-medicine-study-reveals-new-insights-on-brain-development. This plasticity makes the brain more sensitive to environmental influences, which can have lasting impacts on an individual's cognitive and emotional development. *Id*.

The recognition that the human brain, particularly the prefrontal cortex responsible for reasoning, impulse control, and decision-making, does not fully mature until a person's twenties has been well-documented for years. For instance, the United States Department of Justice, Office of Juvenile Justice and Delinquency Prevention, noted in its 2005 Annual Report that adolescents frequently rely on the emotional parts of their brain rather than the frontal lobe for decision-making, and that the brain regions governing impulse and judgment may not reach full maturity until around age 21 or 22. Similarly, a 2004 study by Jay N. Giedd, published in the *Annals of the New York Academy of Sciences*, reported that the prefrontal cortex—vital for executive functions like organization, planning, and impulse control—continues developing into the early twenties. Jay N. Giedd, Structural Magnetic Resonance Imaging of the Adolescent Brain, 1021 Annals N.Y. Acad. Science 105-09 (June 2004). Additionally, an article by Elizabeth Williamson in the *Washington Post* highlighted findings from the same longitudinal study by Dr. Giedd, indicating that the brain region inhibiting risky behavior is not fully developed until age 25. Elizabeth Williamson, Brain Immaturity Could Explain Teen Crash Rate, Wash. Post, Feb. 1, 2005, at A01. These insights have long informed discussions on adolescent behavior and its implications for areas like federal sentencing.

Considering Mr. Lester's extensive adversities during his developmental years, a time served sentence with supervised release is far more appropriate than the 97–121-month guideline range, particularly considering his neurological and psychological growth that was not yet complete during the time of this offense. Thrust early into adult responsibilities, Mr. Lester lacked the necessary familial support and positive role models as he navigated the challenges of his childhood. This environment not only stunted his emotional and cognitive development but also left him vulnerable to substance abuse as a coping mechanism, a path influenced further by the only role models available—his substance-using mother, his alcoholic stepfather, and his uncle, a drug dealer.

Mr. Lester is still within the critical period of brain development, particularly in the regions responsible for impulse control, judgment, and decision-making. This ongoing maturation process is crucial to consider, especially as it aligns with findings that the brain may not fully mature until the mid-20s.

The U.S.C. 3553(a) sentencing factors emphasize considering the nature and circumstances of the offense and the history and characteristics of the defendant, advocating for a sentence sufficient but not greater than necessary to accomplish the goals of sentencing. Given Mr. Lester's background and the significant potential for rehabilitation—underscored by his expressed commitment to change his life and provide for his young children – a time served of 22 months sentence along with supervised release focused on rehabilitation rather than mere punishment would be more aligned with the goals of sentencing. This approach not only acknowledges the role of his delayed brain maturity in his past behavior but also leverages his current motivations and capabilities for a positive transformation, serving the best interests of both Mr. Lester and society.

e. **Mr. Lester should receive credit for the hard time he has spent in State Custody.**

Mr. Lester moves the Court to vary downward to account for the nearly 22 months he has served in custody pending his sentencing. Mr. Lester asks this Court to consider the punishment and the nature of the incarceration that has already been imposed. It is in this Court's discretion to consider the length and nature of time spent in custody. *United States v. McFarlane*, 478 F.Supp.3d 125, 127 (D. Mass. 2020). Mr. Lester has spent a significant time of uncertainty in Washington County Jail. Mr. Lester was taken into custody on November 1, 2023, and has remained in custody in an environment poorly equipped for long-term incarceration. Washington County Jail lacks the programming needed to address Mr. Lesters mental health and substance abuse concerns.

Additionally, Mr. Lester has been the subject of consistent adverse experiences during his time in custody resulting in unwarranted days in solitary confinement type settings. It is imperative that this Court recognize the harsh conditions and length of presentence detention because 18 U.S.C. § 3553(a) instructs this Court to consider the "need for just punishment."

## CONCLUSION

Based on the foregoing, Mr. Lester respectfully requests this Court sentence him to time served and order three years of supervised release.

Respectfully submitted,

Dated: August 14, 2025

*/s/ Patrick L. Cotter*
Patrick L. Cotter
Attorney No. 0319120
Attorney for Defendant
105 Hardman Court, Suite 110
South St. Paul, MN 55075
Phone: 651-455-1555
Fax: 651-455-9055
patrick@siebencotterlaw.com